[Cite as *In re C.J.L.*, 2014-Ohio-1766.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

| | | |
|---|---|---|
| IN THE MATTER OF: | : | Case No. 13CA3545 |
| | : | |
| C.J.L. & K.R.L. | : | |
| | : | <u>DECISION AND</u> |
| Minor Children – Custody. | : | <u>JUDGMENT ENTRY</u> |

**RELEASED:  04/14/14**

_____

APPEARANCES:

Richard E. Wolfson, Portsmouth, Ohio, for appellant.

Joan M. Garaczkowski, Garaczkowski & Hoover, Portsmouth, Ohio, for appellees.
_____
Harsha, J.

{¶1}    Beth Howard appeals the trial court's judgment continuing legal custody of her children C.J.L. and K.R.L. with her parents, James and Betty Campbell.  Howard argues that the trial court erred by failing to grant her motion to terminate temporary custody.  She also contends because there was never a finding of parental unsuitability, the court improperly based its custody determination on whether there had been a change in circumstances and whether a change in custody would have been in the children's best interests.

{¶2}    The record reflects that Howard agreed to grant the Campbells temporary custody.  Although the record is somewhat confusing, we conclude that the trial court was exercising its neglect jurisdiction under R.C. 2151.23(A)(1).  Because the order granting the Campbells temporary custody had terminated by operation of law, the court had to first consider whether the problems that led to the necessity of temporary custody had been resolved or sufficiently mitigated.  If so, the court should have

terminated the case and returned custody to Howard. If not, then it had discretion to make a dispositional order in the best interests of the children.

{¶3}    Therefore, we agree that the trial court erred by basing its custody determination on whether there had been a change in circumstances and whether a change in custody would have been in the children's best interests.

## I. FACTS

{¶4}    C.J.L. and K.R.L. were born in December 2003 and are the natural children of Howard and Darren Bentley. At the time Howard was a minor and the couple was unmarried. After their birth, she and the children continued to live with Howard's parents. On June 22, 2004, the Campbells filed separate petitions for temporary custody of C.J.L. and K.R.L. "pursuant to 2151.03 of the Ohio Revised Code," the statute that defines a "neglected child." In each petition the Campbells alleged:

> The parties are in agreement it is in the minor child's best interest to designate the maternal grandparents temporary custody of the minor child and it is necessary for financial and medical purposes for the minor child. The mother and father of the minor child * * * have never been married and are financially not able to care for the twins. The parties feel it is in the best interest of the minor child to designate the Petitioners temporary custody.

Howard and the father both signed waiver of service forms acknowledging receipt of the petition, waiving service of the summons and entering an appearance in the case.

{¶5}    The next day, "by agreement of the parties, and for good cause shown," the court granted the Campbells temporary custody of the children "pursuant to Ohio Revised Code 2151.03." The court awarded Howard and the father visitation according to local rule and any other visitation that the parties could agree upon.

**{¶6}** The next relevant filing occurred in February 2009 when the father filed a motion to terminate the Campbells' temporary custody and asked the court to grant him custody. He also sought alternative relief.

**{¶7}** In October 2009, the court issued an "Agreed Judgment Entry," signed by Bentley (but not Howard) directing that "custody remain vested with [the Campbells]," "until further order of the court."

**{¶8}** Howard and the children continued living with the Campbells until 2010, when she left their home and moved in with her husband. However, the children remained in the Campbells' home. In April 2011, Howard filed a motion "seeking modification of a custody order by [the] Court on June 23, 2004," "pursuant to Rule 19 of the Ohio Rules of Juvenile Procedure." She alleged that there had been "a change in circumstances" and granting her legal custody would be in the "children's best interest." In June 2011, the father also filed a motion to modify the court's prior custody order and asked the court to terminate the Campbells' temporary custody and grant him permanent custody of the children. He alleged that a change in circumstances warranted this outcome.

**{¶9}** In March 2012, after failed mediation efforts, Howard filed a motion to terminate the Campbells' temporary custody pursuant to Juv.R. 14(A), or in the alternative to modify it pursuant to Juv.R. 14(C). In the motion, Howard characterized the Campbells' temporary custody as originally granted on June 23, 2004, and "renewed by agreement on October 02, 2009."

**{¶10}** The matter ultimately came on for a hearing on the parties' pending custody and contempt motions. After two days of testimony, the court issued its

"FINDING OF THE COURT AND ENTRY." The entry notes that a trial court "shall not modify prior custody orders unless it follows the statutory requirements set forth in R.C. 3109.04(E)(1)(a)," which requires a change in circumstances and that a change in custody is in the child's best interests. The court found that there had been no change in circumstances for the children or the Campbells since the parents agreed to relinquish custody in 2004. The court also found a change in custody would not be in the children's best interests and ordered that "legal custody" of the children "shall remain" with the Campbells. Howard appeals the trial court's judgment. Bently does not.

## II. ASSIGNMENTS OF ERROR

{¶11} Howard raises three assignments of error for our review:

1. THE TRIAL COURT ERRED AS A MATTER OF LAW IN BASING ITS DECISION ON O.R.C. §3109.04(E)(1)(a), IGNORING THE FUNDAMENTAL PARENTAL RIGHT OF THE PETITIONER-MOTHER AND ABSENT A DETERMINATION OF UNSUITABILITY.

2. THE TRIAL COURT ERRED AS A MATTER OF LAW BY FAILING TO TERMINATE RESPONDENT-APPELLEES' TEMPORARY CUSTODY UPON MOTION OF THE PETITIONER-MOTHER, PURSUANT TO JUV.R. 14 AND O.R.C. §2151.01.1(B)(52), §2151.35, AND §2151.35.3.

3. THE TRIAL COURT DECISION WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.

## III. STANDARD OF REVIEW

{¶12} A trial court has broad discretion in determining custody matters. *Reynolds v. Goll*, 75 Ohio St.3d 121, 124, 661 N.E.2d 1008 (1996). Consequently, we will not reverse a trial court's custody decision absent an abuse of discretion. *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997). When applying an abuse of discretion standard, we are not free to merely substitute our judgment for that of the

trial court. *In re Jane Doe* 1, 57 Ohio St.3d 135, 137-138, 566 N.E.2d 1181 (1991). "A deferential review in a child-custody case is appropriate because much may be evident in the parties' demeanor and attitude that does not translate to the record well." *Purvis v. Hazelbaker*, 181 Ohio App.3d 167, 2009-Ohio-765, 908 N.E.2d 489, ¶ 9 (4th Dist.), citing *Davis* at 419. "However, a trial court has no discretion to apply an improper legal standard in a custody dispute between a parent and a nonparent. We review such 'process flaws' without deference to the trial court." *Purvis* at ¶ 9.

## IV. LAW AND ANALYSIS

**{¶13}** In her first assignment of error, Howard contends that the trial court erred by applying R.C. 3109.04(E)(1)(a) and basing its custody determination on whether there had been a change in circumstances and whether a change in custody would have been in the children's best interests. She argues that the court could not apply this standard without first making a finding of parental unsuitability.

**{¶14}** The Campbells respond that the court adjudicated the children neglected in the 2004 agreed entry and granted them temporary custody. They assert that both Howard and the father agreed to convert their temporary custody of the children to full legal custody in the October 2009 entry. Therefore, the Campbells allege that the court did not have to first find Howard unsuitable and did not err by applying R.C. 3109.04(E)(1)(a) to determine custody.

## A. Parents' Paramount Right

**{¶15}** "In a child-custody proceeding between a parent and a nonparent, a court may not award custody to the nonparent without first determining that the parent is unsuitable to raise the child, i.e., without determining by a preponderance of the

evidence that the parent abandoned the child, contractually relinquished custody of the child, or has become totally incapable of supporting or caring for the child, or that an award of custody to the parent would be detrimental to the child." *Purvis*, 181 Ohio App.3d 167, 2009-Ohio-765, 908 N.E.2d 489, at ¶ 10, citing *In re Perales*, 52 Ohio St.2d 89, 369 N.E.2d 1047 (1977), syllabus. Generally between parents and nonparents, "'parents who are "suitable" persons have a "paramount" right to the custody of their minor children unless they forfeit that right by contract, abandonment, or by becoming totally unable to care for and support those children.'" *Masitto v. Masitto*, 22 Ohio St.3d 63, 65, 488 N.E.2d 857 (1986), quoting *Perales* at 97. "[O]nce custody has been awarded to a nonparent, the court will not apply the *Perales* unfitness standard to a later request for custody modification. Instead, custody modification in that situation is determined under the R.C. 3109.04 change-of-circumstances/best-interest standard." *Purvis* at ¶ 10. "In other words, if a parent has custody of her minor child, a custody dispute with a nonparent is determined under the *Perales* standard; but if a custody award has previously been made to a nonparent, the party seeking to modify that award must show a change-in-circumstances/best-interest issue even if the noncustodial party is a parent and the custodial party is a nonparent." *Id.*

### B. The Nature of Howard's grant

{¶16} To address Howard's first assignment of error, we review the procedural history of this case. Much of the confusion in this matter arises from the Campbells' original 2004 petition asking the court to grant them temporary custody. In the petition, the Campbells sought temporary custody of the children "pursuant to 2151.03 of the Ohio Revised Code," because Howard and the father were "financially unable to care

for the twins" and it would be the children's "best interest."  R.C. 2151.03 defines

"neglected child" and includes any child, "[w]hose parents, guardian, or custodian

neglects the child or refuses to provide proper or  necessary subsistence, education,

medical or surgical care or treatment, or other care necessary for the child's health,

morals, or well being[.]"  R.C. 2151.03(A)(3).  However, the averments in the complaint

more closely meet the requirements for dependency under R.C. 2151.04(A).  "Although

it is possible for a child to be both neglected and dependant, there is a clear distinction

between the two terms.  Where as a neglected child lacks proper care because of the

fault of a parent…, the dependency case focuses instead upon the condition or

environment of the child."  Giannelli & Salvador, *Ohio Juvenile Law*, Section 28.2 (2013)

(footnotes omitted).  Nonetheless, in its June 23, 2004 judgment entry, the court granted

the Campbells temporary custody of the children "pursuant to Ohio Revised Code

2151.03," "by agreement of the parties, and for good cause shown * * *."  This entry was

"submitted by" the Campbells' attorney and "approved by" the Campbells, Howard and

the father.

{¶17}  It is undisputed that the June 2004 entry only granted the Campbells

temporary custody.  That entry was signed and "approved by" the Campbells, Howard

and the father.  To the extext that the Campbells assert that Howard granted them full

legal custody of the children in the October 2009 entry, we disagree.  That entry orders

that "custody remain vested with [the Campbells]."  The only form of custody that had

rested with the Campbells prior to October 2009 was temporary custody.  Therefore,

what "remained" was also temporary in nature.  Moreover, that agreed entry was only

"approved by" the father's attorney.  Although the entry states Howard was present at

the hearing, unlike the 2004 entry, she did not sign the 2009 entry.  Thus, even if we were to assume the October 2009 entry somehow transmuted the nature of the original agreement, we reject the Campbells' assertion that Howard was a party to the 2009 entry and granted them full legal custody of the children.

### C.  The Trial Court's Jurisdiction

**{¶18}**  Next, we consider the jurisdictional basis for the trial court's June 2004 order of temporary custody.

**{¶19}**  R.C. 2151.23 is titled "Jurisdiction of juvenile court" and states:

(A) The juvenile court has exclusive original jurisdiction under the Revised Code as follows:

(1) Concerning any child who on or about the date specified in the complaint, indictment, or information is alleged * * * to be a juvenile traffic offender or a delinquent, unruly, abused, neglected, or dependent child and, based on and in relation to the allegation pertaining to the child, concerning the parent, guardian, or other person having care of a child who is alleged to be an unruly or delinquent child for being an habitual or chronic truant;

(2) Subject to divisions (G), (K), and (V) of section 2301.03 of the Revised Code, to determine the custody of any child not a ward of another court of this state * * *.

**{¶20}**  Under R.C. 2151.23(A)(1), the juvenile court has exclusive original jurisdiction concerning any child alleged to be neglected.  Under this section, "a public or private party can initiate an action pursuant to R.C. 2151.27 to have a court determine whether a child is neglected."  *In re Shepherd*, 4th Dist. Highland No. 00CA12,  2001 WL 802209, *6 (Mar. 26, 2001).  Although we note there are numerous procedural and substantive problems with the court proceeding under its neglect jurisdiction, we conclude Howard waived any errors in this regard due to her acquiescence in the proceedings and her failure to appeal the court's June 2004

judgment.  In essence we conclude these irregularities were simply errors in the exercise of jurisdiction, rather than a failure to invoke the court's subject matter jurisdiction.  *See generally Pratts v. Hurley*, 102 Ohio St.3d. 81, 2004-Ohio-1980, ¶ 10-12.  Therefore, we conclude that the court was exercising its neglect jurisdiction under R.C. 2151.23(A)(1), based upon the wording of the complaint and that of the agreed order of June 2004, both of which cite the neglect statute.  *But see State ex rel. Swanson v. Hague*, 11th Dist. Ashtabula No. 2009-A-0053, 2010-Ohio-4200 (holding pleading deficiencies in a dependency action failed to invoke the court's dependency jurisdiction).

**{¶21}**  Once the court adjudicated the children neglected under R.C. 2151.353(A)(2) it could "commit the child[ren] to the temporary custody of a * * * relative residing within or outside the state * * *."  However, "[t]here is a built-in time limit to any award of temporary custody" under R.C. 2151.23(A)(1).  *In re Shepherd* at *6.  Assuming there have been no extensions granted, "it must terminate one year after the earlier of the date on which the complaint was filed or the date on which the child was first placed into shelter care." *Id.*, citing R.C. 2151.353(F); Juv.R. 14(A).

**{¶22}**  Nevertheless, a parent "is not entitled to immediate custody of [the child] because of the sunset provision contained in R.C. 2151.353(F)." *Holloway v. Clermont County Dept. of Human Servs.*, 80 Ohio St.3d 128, 130, 684 N.E.2d 1217 (1997).  Although temporary custody is terminated upon the passing of the "sunset date" in R.C. 2151.353(F), the juvenile court retains its general jurisdiction to make further dispositional orders as it deems necessary to protect the child pursuant to R.C.

2151.353(E)(1). *In re Young Children*, 76 Ohio St.3d 632, 637-638, 669 N.E.2d 1140

(1996).

> R.C. 2151.353(E)(1) provides in pertinent part that "[t]he court shall retain jurisdiction over any child for whom the court issues an order of disposition pursuant to division (A) of this section * * * until the child attains the age of eighteen * * * or the child is adopted." It seems abundantly clear that this provision was intended to ensure that a child's welfare would always be subject to court review. That is, given that a child, by virtue of being before the court pursuant to R.C. Chapter 2151, was at risk of some harm, the General Assembly provided for the child's safety and welfare by ensuring that the juvenile court would retain jurisdiction over the child through the age of majority. R.C. Chapter 2151 places no limitation on this general jurisdiction.

*Id.* at 638. When the sunset date has passed and "the problems that led to the original

grant of temporary custody have not been resolved or sufficiently mitigated, courts have

the discretion to make a dispositional order in the best interests of the child. Where the

original problems have been resolved or sufficiently mitigated, courts may not make

further dispositional orders based on the original complaint." *Id.*

{¶23} In *In re D.H.*, 4th Dist. Gallia No. 09CA11, 2009-Ohio-6009, we considered

whether a simple dismissal of the case is appropriate once the sunset provision in R.C.

2151.353(F) terminates temporary custody. *In re D.H.* at ¶ 35. We concluded:

> [t]o properly effectuate this legislative intent, before a juvenile court dismisses a complaint after finding a child dependent, it should expressly find that any problems that led to the necessity of temporary custody have been resolved or sufficiently mitigated. Both R.C. 2151.353 and *In re Young Children* compel such a requirement.
>
> If the court finds that those problems have not been resolved or sufficiently mitigated, then it has the power to make a further dispositional order under R.C. 2151.415. *In re Young Children*, 76 Ohio St.3d at 639, 669 N.E.2d 1140. If the court finds those problems are resolved, it should order that the child be returned to the parent or appropriate legal custodian. *Id.* A simple dismissal is not in the best interest of the child and it is not within those six permissible dispositional orders as set forth by the legislature in R.C. 2151.353.

*Id.* at ¶ 42-43.

**{¶24}** Thus, because the trial court was proceeding under its neglect jurisdiction, it had to first consider whether the problems that led to the necessity of temporary custody had been resolved or sufficiently mitigated. *See id.* Only if the court found they had not, did it have discretion to make a dispositional order in the best interests of the children. *See In re Young Children* at 638.

**{¶25}** Therefore, we agree that the trial court erred by applying R.C. 3109.04(E)(1)(a) and basing its custody determination on whether there had been a change in circumstances and if a change in custody would have been in the children's best interests. Accordingly, we sustain Howard's first assignment of error. This renders her remaining assignments of error moot and we decline to address them. *See* App.R. 12(A)(1)(C).

## V. CONCLUSION

**{¶26}** Howard only agreed to grant the Campbells temporary custody of the children. In exercising its neglect jurisdiction under R.C. 2151.23(A)(1), the court erred in continuing custody with the Campbells by applying R.C.3109.04(E)(1)(a). Thus, we reverse the trial court's judgment and remand for proceedings consistent with this decision and the holdings in *In Re: Young*, *supra* and *In Re: D.H.*, *supra*.

JUDGMENT REVERSED
AND CAUSE REMANDED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS REVERSED and that the CAUSE IS REMANDED.  Appellees shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Court of Common Pleas, Juvenile Division, to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

* Powell, J.:  Concurs in Judgment and Opinion.
Abele, P.J.:  Dissents.


For the Court



BY:  _____
         William H. Harsha, Judge


## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**


* Michael E. Powell, from the Twelfth Appellate District, sitting by assignment of The Supreme Court of Ohio in the Fourth Appellate District.